In the Matter of ISAAC STRAHL, an Attorney, Respondent. ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK, Petitioner.

First Department, July 13, 1961.

*Eric Nightingale* (*Michael Franck* with him on the brief), for petitioner.

*Isaac Strahl,* respondent in person.

*Per Curiam.* Respondent in this disciplinary proceeding was admitted to practice in this State in 1930. The facts do not appear to be substantially in dispute; and consistently with a spirit of candor and co-operation evinced by respondent since complaint was first made against him, he has stipulated that the proceeding be submitted to us on the record before the Committee on Grievances of the petitioner Association of the Bar of the City of New York.

Respondent negotiated a settlement for $900 with a casualty insurance company of a client's claim for personal injuries. Before the insurance company would deliver its check, it required a general release executed by the client, a physician's statement and a statement from the client's employer as to the time she had been away from work. The physician's report was in the possession of respondent at the time, but not the other two required documents.

When respondent telephoned his client, a Mrs. Bierman, she said she could not come to his office but authorized him to sign the release in her name. He signed her name, adding his own as a witness, and had the spurious signature notarized. With his client's consent, he called her employer, who refused to give a statement because she did not want to become involved in legal matters. When respondent reported her employer's attitude to Mrs. Bierman, she expressed fear that if they pressed for a statement she would lose her job.

Respondent then did what he has characterized as "quite a stupid thing and a foolish thing." He prepared and signed a letter in the name of another of his clients, stating that Mrs. Bierman had worked for him and lost 40 days from work, a period which he testified conformed to what he had been told both by Mrs. Bierman and her employer.

Respondent then forwarded the three documents to the insurance company, and received in return a check in the amount of $900, payable to Mrs. Bierman and himself as attorney, which he indorsed by signing her name and his own and deposited in his account. He wrote Mrs. Bierman, requesting her to come to his office and receive her share of the settlement proceeds.

Also, he made out a check to her order for $450, and left it undetached, in its chronological order, in his checkbook — where it still remains at this time. Mrs. Bierman, through another attorney she retained, demanded $600 as her share, which respondent refused to give her. A complaint was made by the insurance company to the District Attorney; and about that time Mrs. Bierman's attorney told respondent the case merited a $1,200 settlement. Respondent paid the $1,200 to Mrs. Bierman and her attorney and received a general release. Shortly thereafter he was indicted for forgery in the second degree and grand larceny in the first degree. Some time later he pleaded guilty to petit larceny, received a suspended sentence and was placed on probation for one day.

Respondent, who is about 60 years of age, has, aside from this isolated incident, apparently enjoyed an excellent reputation and practiced law honorably for 31 years. He resides with his wife and two children, ages eight and four. His practice is chiefly of a commercial nature and he has evidently had very little experience in the handling of personal injury claims. He also renders a vast amount of services, on a voluntary basis, to charitable, educational and religious organizations — in many of which he holds office. While not advanced as justification for his conduct, at the time he was handling Mrs. Bierman's claim respondent was under constant medical observation for indications of cancer, which, as he put it, " did not put me in a good frame of mind to be able to weigh things properly."

In view of the otherwise good professional record of respondent, his frank and unequivocal avowal as well as appreciation of his misconduct, his co-operation with petitioner, his exceptional record of volunteer communal work and the stress of mind he was subject to because of his illness, we are inclined to extend consideration that we would withhold in the disposition of a similar offense in which there was no showing of the mitigating circumstances present here (see *Matter of Hahn*, 285 App. Div. 592; *Matter of Colvin*, 12 A D 2d 83; *Matter of O'Doherty*, 14 A D 2d 4, decided simultaneously herewith). Also, the clear tenor of the memorandum submitted by petitioner Bar Association is a recommendation of clemency.

Respondent should be suspended for a period of six months.

BOTEIN, P. J., BREITEL, RABIN, VALENTE and STEUER, JJ., concur.

Respondent suspended for a period of six months.